```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION

DESIGN MART LLC,                    *

        Plaintiff,                  *

vs.                                 *
                                          CASE NO. 3:23-CV-82 (CDL)
MATTHEWS INTERNATIONAL              *
CORPORATION,
                                    *
        Defendant.
                                    *
_____
                                    *
```

O R D E R

Design Mart LLC holds registered copyrights for gravestone designs. Design Mart asserts that Matthews International Corporation willfully infringed its copyrighted gravestone designs by uploading Design Mart's designs into Matthews's online catalog. Presently pending before the Court are both parties' summary judgment motions. Design Mart contends that it is entitled to summary judgment that (a) Matthews is liable for copyright infringement of its designs and (b) each of the designs is eligible for statutory damages under the Copyright Act. Matthews, on the other hand, argues that (a) Design Mart cannot assert a valid copyright claim against it, (b) it did not copy as many designs as Design Mart claims it did, (c) Design Mart cannot recover statutory damages for each individual design, and (d) Design Mart cannot prove actual damages. For the reasons set forth below, the Court grants in part and denies in part Design Mart's summary judgment

motion (ECF No. 43) and denies Matthews's summary judgment motion (ECF No. 36).  As explained in this Order, Design Mart is entitled to summary judgment on the factual and legal copying element of its copyright infringement claim for 175 designs, but genuine fact disputes exist on whether Matthews copied the remaining designs. Genuine fact disputes also exist on statutory and actual damages.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

In this action, both sides submitted statements of undisputed facts and responses to those statements.  Matthews denies some of Design Mart's fact statements, which are supported by citations to evidence that is in the present record, because Matthews lacks knowledge or information sufficient to form a belief on the fact

statement.  To create a genuine fact dispute, though, Matthews must point to *evidence*.  Simply denying a fact statement or saying "I don't know" is not enough.  Matthews did not submit a Rule 56(d) affidavit or otherwise contend that it could not obtain information on these matters during discovery despite the exercise of reasonable diligence.  Accordingly, Design Mart's fact statements that Matthews denied without citing any evidence to create a fact dispute stand unrebutted.

"CONFIDENTIAL" INFORMATION REFERENCED IN FILINGS

Before the Court recounts the facts, the Court must determine whether any portions of this order should be sealed because of the parties' protective order.  The protective order permits the parties to designate as confidential any document or portion of a document that contains "trade secret information, confidential research, development, or commercial information."  Protective Order ¶ 2, ECF No. 25.  Here, Design Mart relies heavily on the deposition of Alison Reeder, an employee of Matthews.  Matthews designated Reeder's entire deposition as confidential, so Design Mart believed that it was obligated to file the deposition under seal and redact several whole pages of its summary judgment brief and fact statement.

Although the protective order outlines processes for objecting to confidentiality designations (Protective Order ¶ 12) and introducing designated materials in a public filing

(Protective Order ¶ 22), Design Mart did not follow either process. Instead, it filed a short motion to seal on the same day that its dispositive motion was due, explaining that although Design Mart does not contend that the Reeder deposition contains confidential information, Design Mart requested permission to file the deposition under seal because Matthews designated it as confidential. Design Mart also sought permission to redact significant portions of its summary judgment brief and fact statement that relied on the Reeder deposition. The Court summarily granted the motion in a text order.

In hindsight, the Court should have insisted that the parties follow the process for de-designating confidential materials, particularly given that the designation in question was an entire deposition transcript. Then, Matthews could have admitted that its designation of an entire deposition transcript as confidential was overbroad, and it could have conceded that the portions of Design Mart's fact statement and summary judgment brief that relied on the Reeder deposition need not be sealed from public disclosure. As it stands, though, the Court will consider the matter as though Matthews insisted on maintaining the confidentiality designation.

As the Court stated in its 16/26 Order, there is a presumption that any evidence relied on in a motion or in opposition to a motion shall be public record. 16/26 Order (Sep. 14, 2023), ECF No. 20. Materials may be sealed from the public docket only when

there is a compelling reason to do so.  The Court carefully reviewed the portions of Design Mart's summary judgment brief and fact statement that rely on Reeder's deposition testimony.  The Court finds that none of the information is "trade secret information" or "confidential research, development, or commercial information."  There is no disclosure of sensitive information like financial data, marketing strategies, pricing information, customer data, or trade secrets.  Moreover, the present order does not disclose any such confidential information.  Accordingly, this order shall be filed on the public docket, with no redactions.

Within seven days of today's order, Matthews shall show cause why the transcript of Alison Reeder's deposition (ECF No. 45-2), Design Mart's summary judgment brief (ECF No. 45), and Design Mart's fact statement (ECF No. 47-1) should not be unsealed.  If Matthews maintains that a specific portion of the transcript, brief, or fact statement should remain under seal, then Matthews must provide a pinpoint citation to that portion and explain why it should be sealed from public disclosure.

FACTUAL BACKGROUND

The present record reveals the following facts.  Design Mart LLC is a Georgia business that creates original designs for gravestones.  M. Fernandez 1st Decl. ¶ 3, ECF No. 43-3.[1]  Design

---

[1] Matthews objects to Fernandez's declaration because it is "self-serving."  "A non-conclusory [declaration] which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even

Mart owns fifty-three copyright registrations, which cover "hundreds of Design Mart's individual designs." *Id.* ¶¶ 15-16; *accord id.* Ex. 11, Certificates of Copyright Registration, ECF No. 43-15; *id.* Ex. 12, Copyright Assignment, ECF No. 43-16. In support of its summary judgment motion, Design Mart relies on twenty of those copyright registrations.

Design Mart's customers include cemeteries and funeral homes, as well as gravestone manufacturers like Matthews International Corporation. A customer like Matthews may obtain a license for a Design Mart design, then create and sell a gravestone bearing that design. M. Fernandez 1st Decl. ¶ 8. Design Mart also licenses individual designs for its customers who wish to place those designs on their own websites. *Id.* Design Mart offers for sale printed booklets and leaflets depicting its designs so that its customers may show their clients the design options. Design Mart also has two subscription-based online design tools called Monument Designer, both of which are password protected and subject to an end user license agreement that is discussed in more detail below. M. Fernandez 2nd Decl. ¶ 9, ECF No. 55-2. The first online tool is Legacy Monument Designer, and it allows Design Mart's

---

if it is self-serving and/or uncorroborated." *United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018). Here, the Fernandez declaration states that it is based on Fernandez's personal knowledge as the managing member of Design Mart, and it states non-conclusory facts about Design Mart's business. *See generally* M. Fernandez 1st Decl., ECF No. 43-3. Thus, the Court may consider the declaration.

subscribers to view 182 of Design Mart's most popular gravestone designs and nearly 250 component designs. *Id.* Between 2009 and 2019, Design Mart charged $29.00 per month per login for a subscription to Legacy Monument Designer, or $349 per login per year. *Id.* ¶ 10. From 2020 to the present, Design Mart charged $34.00 per month per login, or $408 per login per year. *Id.* The second online tool is New Monument Designer, which includes more than 1,000 designs and more than 7,000 component designs. *Id.* ¶ 11. Design Mart charges $79 per month per login for a subscription to New Monument Designer.

Once the gravestone manufacturer's client selects a Design Mart Design, the gravestone manufacturer can purchase computer-aided design ("CAD") files from Design Mart, and those files are used "to create stencils for sandblasting a design into a tombstone." M. Fernandez 1st Decl. ¶ 18. The CAD files can be purchased through Monument Designer. Pullen Decl. ¶¶ 7-12, ECF No. 52-6. Design Mart also sells CDs that contain CAD files. M. Fernandez 1st Decl. ¶ 18. Each CAD file costs between $45 and $85. C. Fernandez Dep. 27:8-13, ECF No. 42-2; *accord* M. Fernandez 2nd Decl. ¶ 23. The CDs contain copyright notices, and purchasing a CD does not convey the underlying copyright of the design or permit the CD purchaser to distribute the files or designs to others. M. Fernandez 1st Decl. ¶ 18. According to Design Mart's managing member, Design Mart assigns a unique identifier to each

design, and when Design Mart "publishes its designs, each design" is accompanied by a copyright notice. *Id.* ¶ 7.[2]

Everlasting Granite is a division of Matthews that had a subscription for one login to Design Mart's Legacy Monument Designer from 2011 until August 2024 and a subscription for one login to Design Mart's New Monument Designer from 2015 until August 2024. M. Fernandez 2nd Decl. ¶ 19. Matthews agreed to a license agreement for Monument Designer.[3] The license agreement granted a subscriber like Matthews the rights "to use Design Mart's Monument Designer & Catalog," to access Monument Designer during the term of the subscription, and to access Design Mart's catalog during the term of the subscription. Def.'s Resp. to Pl.'s Mot. Summ. J. Ex. C, License Agreement, ECF No. 52-4. The license agreement also states:

---

[2] Matthews denies that Design Mart's designs are accompanied by copyright notices, but the evidence it cited on this point does not relate to copyright notices or create a genuine fact dispute on this issue. Matthews did point to evidence that its employees sometimes received CAD files via email, and its drafting supervisor believes "that there are no restrictions on the use or time limits associated with use of" such files because when he received design files from Design Mart via email, the email did not list any restrictions. Pullen Decl. ¶¶ 14, 17. Matthews relies on one email where a Design Mart employee sent a design file to Matthews for the "Dunlap job" after Matthews "paid for and received the stencils," because Matthews needed to have its Everlasting division carve two of the vases that were out of stock. Def.'s Resp. to Pl.'s Mot. Summ. J. Ex. G, Email Chain between P. Davis & C. Shepherd, ECF No. 53-8. There is no copyright notice on that email, but it is unclear what communication preceded that email, and Matthews did not point to evidence that the "Dunlap job" involved one of the designs Matthews is accused of infringing in this action.

[3] The license agreement exhibit Matthews submitted and relies on does not state whether it is for Legacy Monument Designer, New Monument Designer, or both.

> [A subscriber may] [p]rint, email, mail, or fax monument
> concepts created with Design Mart's Monument Designer &
> Catalog for the purpose of giving or presenting them to
> families who are making a decision on a monument or to
> a manufacturer who will be processing the monument.
> *Monuments and components included in Design Mart's
> Online Monument Designer & Catalog may not be
> redistributed, printed in brochures or featured on web
> sites or provided to others via any other printed or
> electronic media.*

*Id.* (emphasis added).  The license agreement further states that

a subscriber "may allow access to others under the same terms as

the subscriber" but that "Design Mart's Monument Designer & Catalog

is available only through Design Mart, LLC, and may not be resold

or repackaged for release or distribution as a whole or in parts."

*Id.*  And, the license agreement states that subscribers "may not

reverse engineer, copy, decompile, or disassemble Design Mart's

Monument Designer & Catalogs.  All components and artwork, whether

considered in parts or as a whole remain licensed products from

Design Mart, LLC."  *Id.*

    In 2019, Matthews acquired a company that maintained an online

gravestone design catalog called Design Pro.  Matthews began

providing the customers of its Everlasting division with access to

Design Pro, and its customers, such as cemeteries and funeral

homes, asked Matthews for access to Design Mart's designs in Design

Pro.  Greg Gunter, who was president of the Everlasting division,

instructed an employee named Alison Reeder to upload images of

Design Mart designs into Design Pro.[4]  Reeder Dep. 27:12-29:6, ECF No. 45-2.  He told Reeder that if Design Mart asked Everlasting to take down the designs, Everlasting would "take them down."  *Id.* at 58:19-59:2.  As instructed, Reeder uploaded Design Mart designs into Design Pro, including designs from Design Mart's booklets entitled "Precious Memories," "Ties That Bind," "A Closer Walk," and "Hold On To The Memory."  *Id.* at 20:4-5; 112:11-113:14.

Each design Reeder uploaded to Design Pro originated with a Design Mart CAD file that Everlasting had on its server; Reeder converted the CAD files into image files so they could be uploaded.  *Id.* at 25:15-26:7; 56:20-57:3.  When Reeder uploaded Design Mart's designs into Design Pro, she used the same unique identifier numbers but changed the prefix from "D" to "MG."  *Id.* at 59:15-60:12.  Reeder also "tweak[ed] the designs slightly" because she "would hate to do all this work [converting and uploading Design Mart's designs to Design Pro] and Design Mart comes along and says take it down[.]"  Reeder Dep. Ex. 6, Email from A. Reeder to G. Gunter (June 7, 2019), ECF No. 45-4.  Her example of a "tweak" for one design was taking out a curlicue and putting a leaf in its place.  Reeder Dep. 59:24-60:1.

---

[4] Matthews does not dispute that Reeder testified that Gunter instructed her to upload Design Mart's designs to Design Pro.  Matthews notes that Gunter does not remember giving these instructions, but "I don't recall" does not create a genuine fact dispute on this issue.

In the spring of 2022, Design Mart's managing member Michael Fernandez obtained login credentials for Design Pro and discovered that "Matthews had copied many of Design Mart's designs and published them" in Matthews's Design Pro online catalog.[5]   M. Fernandez 1st Decl. ¶ 9.   Fernandez saw 175 designs that "had obviously been copied from Design Mart designs" and had the same identification numbers.  *Id.* ¶¶ 11-12; Pl.'s Mot. Summ. J. App. A, ECF No. 43-4.

## DISCUSSION

Design Mart claims that Matthews infringed its copyright for 202 gravestone designs.   "To establish a prima facie case of copyright infringement," Design Mart must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).   Matthews does not deny that (1) Design Mart holds registered copyrights on hundreds of gravestone designs, (2) Matthews uploaded 175 images of Design Mart's copyrighted designs to its Design Pro catalog

---

[5] Matthews asserts that Fernandez knew that some of Design Mart's designs were in Design Pro in 2013, before Matthews acquired Design Pro.  The evidence Matthews cited in support of this assertion does not appear to be in the present record.  Even if there were a genuine fact dispute on whether Fernandez knew that some of Design Mart's designs were in Design Pro before Matthews acquired it, Matthews does not argue that Design Mart surrendered its rights to any of its registered designs by failing to take action in 2013.

with only minor tweaks, (3) Matthews used Design Mart's CAD files to create the images that it uploaded to Design Pro, and (4) Matthews made those Design Mart designs available to Design Pro's subscribers.  Matthews nonetheless argues that it did not infringe Design Mart's copyrights because it had permission to use Design Mart's designs.  According to Matthews, Design Mart's copyright claims must fail because (1) Design Mart waived its right to sue Matthews for copyright infringement, and (2) Design Mart's copyrighted designs are unprotectible.  Matthews further argues that even if Design Mart asserts valid copyright infringement claims, fact disputes preclude summary judgment on whether it engaged in "legal copying" of the designs.  Matthews also argues that Design Mart cannot recover statutory damages on a per-design basis and will not be able to prove actual damages.  The Court addresses each argument in turn.

## I.  Did Design Mart Waive Its Right to Sue for Copyright Infringement?

As part of its subscription to Design Mart's Monument Designer catalog, Matthews agreed to an end user license agreement. Matthews asserts that when Design Mart granted Matthews a license to use Monument Designer, Design Mart waived its right to sue Matthews for copyright infringement.  Matthews is correct that a "copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for

copyright infringement and can sue only for breach of contract." *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008); *accord MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1275 (11th Cir. 1999). The rule exists because a valid license to use the copyrighted work "immunizes the licensee from a charge of copyright infringement," but there is an important caveat: the licensee's use is only protected from a copyright infringement claim if the licensee "uses the copyright as agreed with the licensor." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018). So, even when there is a license, "copyright protections remain in the background to ensure that licensees do not use materials in ways that exceed the scope of their licenses." *MCA Television Ltd.*, 171 F.3d at 1275. If a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement. *See Latimer*, 601 F.3d at 1238 (finding that although the defendant had an implied license to use copyrighted photographs, a reasonable factfinder could conclude that the licensor placed limitations on the license and that the defendant acted outside those limitations, so the license did not shield the defendant from a copyright infringement claim); *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) ("If . . . a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.").

The scope of a license agreement is a matter of contract, so the Court must examine the terms of the license to determine what rights the license granted. Here, Matthews contends that it acted within the scope of the Monument Design end user license agreement because the license agreement "explicitly granted Matthews unlimited and unregulated access to use and download content during the time in which it subscribed to Design Mart's design system." Def.'s Resp. to Pl.'s Fact Statement ¶ 6, ECF No. 54. This argument is borderline frivolous given the plain language of the license agreement. The license agreement permits a Monument Designer subscriber to "[p]rint, email, mail, or fax" a monument concept created with Monument Designer to its client or to a "manufacturer who will be processing the monument," but "[m]onuments and components included in Design Mart's Online Monument Designer & Catalog *may not be redistributed, printed in brochures or featured on web sites or provided to others via any other printed or electronic media*." License Agreement, ECF No. 52-4 (emphasis added). While the license agreement states that a subscriber "may allow access to others under the same terms as the subscriber," such access is subject to the limitations set forth above. *Id.* Moreover, the license agreement states that the designs in the Monument Designer catalog are "available only through Design Mart, LLC, and may not be resold or repackaged for release or distribution as a whole or in parts." *Id.* The license

agreement further states that subscribers "may not reverse engineer, copy, decompile, or disassemble Design Mart's Monument Designer & Catalogs" and that all "components and artwork, whether considered in parts or as a whole remain licensed products from Design Mart, LLC." *Id.* Based on this unambiguous language, a licensee like Matthews was obviously not allowed to take Design Mart's copyrighted designs and put them in its own online catalog. There are no genuine fact disputes on this issue. The Court thus finds, as a matter of law, that for any Design Mart designs Matthews uploaded to Design Pro, Matthews's use of those designs exceeded the scope of the license agreement, and Design Mart may pursue its claims under a copyright infringement theory.

## II. Did Matthews Engage in Legal Copying?

Matthews argues that even if it exceeded the scope of the license agreement, Design Mart cannot establish that Matthews copied constituent elements of its work that are original. As discussed above, copyright infringement only occurs if there is "copying of constituent elements of the work *that are original*." *Latimer*, 601 F.3d at 1232–33 (emphasis added) (quoting *Feist Publ'ns,* 499 U.S. at 345). The "copying" element has two parts: factual copying (the alleged infringer actually copied the plaintiff's copyrighted material) and legal copying (the copied portions of the work were original and the copied work was substantially similar to the copyrighted work).

There is no dispute on factual copying.  Matthews admits that it copied Design Mart's designs and uploaded them to Design Pro. Matthews contends, though, that it did not engage in *legal* copying because the Design Mart designs it uploaded to Design Pro were not copyrightable.  In support of this argument, Matthews relies on the "scènes à faire" doctrine, which precludes copyrighting of "[i]ncidents, characters, or settings that are indispensable or standard in the treatment of a given topic." *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1248 (11th Cir. 1999) (per curiam).  The doctrine exists because "a work must be original to the author" to "qualify for copyright protection," and "stock characters, settings, or events that are common to a particular subject matter or medium . . . lack originality." *Feist Publ'ns*, 499 U.S. at 345; Compendium of U.S. Copyright Office Practices § 313.4(I) (3d ed. 2021), https://perma.cc/Z38W-36MV.

The courts generally use the scènes à faire doctrine to determine whether two works are substantially similar.  Any hackneyed tropes are disregarded as uncopyrightable scènes à faire, and the courts focus on whether similarities exist between "copyrightable material" in the copyrighted work and the allegedly infringing work.  For example, a comic book author cannot prove copyright infringement simply because another comic book author also used common comic book elements like military outfits, grappling guns, and masks.  *Bennett v. Walt Disney Co.*, No. 23-

12786, 2024 WL 4040443, at *2 (11th Cir. Sep. 4, 2024) (per curiam).

While "familiar symbols and designs cannot be registered by themselves, a work of authorship that incorporates one or more of these elements into a larger design may be registered if the work as a whole contains a sufficient amount of creative expression." Compendium of U.S. Copyright Office Practices § 313.4(J) (3d ed. 2021). For example, a fabric designer cannot protect the "idea of a floral pattern depicting bouquets and branches," but it can protect its "original selection, coordination, and arrangement of such elements" because there are "'gazillions of ways' to combine petals, buds, stems, leaves, and colors in floral designs on fabric." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850-51 (9th Cir. 2012) (quoting *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913 (9th Cir. 2010)), *abrogated on other grounds as recognized in*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1198 (9th Cir. 2020).

It is true that many of Design Mart's designs include familiar religious symbols like crosses and praying hands, familiar shapes like rectangles and hearts, and many types of flowers and leaves. Matthews argues that Design Mart's designs cannot be considered "original" for purposes of a copyright claim if they use any of these common symbols. But the term "original" as it is used in copyright "means only that the work was independently created by

17

the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns*, 499 U.S. at 345. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*

Here, Design Mart does not contend that Matthews infringed its designs simply because Matthews published gravestone designs that use common symbols similar to the ones on its designs; this is not a case where the plaintiff is claiming similarity simply because of a heart here or a flower there. Rather, Design Mart asserts that Mathews copied the entire design for each gravestone—designs that required dozens of choices regarding thousands of potential elements to create a finished design. Furthermore, Design Mart presented evidence that Matthews obtained CAD files from Design Mart, then used those files to create images of near identical gravestone designs and published the images on Design Pro. Because of that, the similarities between Design Mart's copyrighted designs and Matthews's allegedly infringing designs extend to the entire composition of each gravestone design, including the shape and size of each monument, how many elements each monument contains, the size of each element, the design of each element, and the placement of each element. Accordingly, the Court finds that the "scènes à faire" doctrine does not bar copyright protection for Design Mart's gravestone designs.

Matthews argues that even if the "scènes à faire" doctrine does not apply, there is at least a fact question on whether the designs it uploaded to Design Pro were substantially similar to Design Mart's original designs. Substantial similarity exists if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008)). The substantial similarity inquiry is normally fact intensive, and the factfinder must "identify and compare the protected expressive features of the two works . . . to determine whether the work's protected expression has been copied." *Id.* at 1316. Based on the present record, though, the Court is not persuaded that any average lay observer could find that there was *not* substantial similarity between Design Mart's designs and the designs Matthews uploaded to Design Pro.

Matthews admits that it literally copied Design Mart's design files, converted them to a different file format, made minor tweaks, and uploaded them to Design Pro. There is no evidence or argument that Matthews independently created the designs it uploaded to Design Pro. Matthews nonetheless contends that it made "substantial alterations" to the designs because the images Design Mart submitted to the Court to show substantial similarity are images from its booklets depicting sample gravestones etched

19

with the designs *plus* sample text to show a potential purchaser what the design might look like with names, dates, and other personalization. *See* Pl.'s Mot. Summ. J. Ex. 10, Design Comparison, ECF No. 43-14. But it is undisputed that Matthews did not copy these booklet images—it copied the CAD files, which present the front view of the design that is used to create a stencil for sandblasting a design onto a gravestone. Moreover, the Court reviewed the sixty-three page exhibit that contains images of Design Mart's designs next to Matthews's allegedly infringing designs. *See id.* The Matthews designs are virtual duplicates of Design Mart's designs in terms of shape, composition, elements, and embellishments. There are only minor differences. For example:



*Id.* at 23 (Design Mart – Left; Matthews – Right). Another example:



*Id.* at 25 (Design Mart – Left; Matthews – Right). Another example:

 

*Id.* at 47 (Design Mart – Left; Matthews – Right).  That was the point: it is undisputed that Matthews decided to upload Design Mart's designs into Design Pro because its customers wanted access to those designs in Design Pro.  For all these reasons, the present record demonstrates that Matthews engaged in "factual" and "legal" copying when it copied images of Design Mart's designs to Design Pro, and Matthews did not point to sufficient evidence to create a genuine fact dispute on this issue.

The next question is *which* designs Matthews copied into Design Pro.  Design Mart's managing member personally observed 175 of Design Mart's designs in Design Pro.[6]  Matthews did not point to

---

[6] Those designs are: D626, D632, D851, D852, D853, D856, D862, D865, D867, D868, D869, D870, D871, D872, D873, D874, D875, D876, D877, D878, D879, D880, D881, D882, D883, D884, D885, D886, D887, D888, D890, D891, D892, D893, D896, D897, D898, D899, D902, D903, D908, D910, D912, D913, D914, D915, D916, D917, D918, D919, D920, D921, D922, D923, D924, D925, D926, D927, D928, D929, D930, D931, D932, D933, D934, D935, D936, D937, D938, D939, D940, D941, D942, D943, D944, D945, D946, D947, D948, D949, D950, D951, D952, D953, D954, D955, D956, D959, D960, D961, D962, D963, D964, D965, D966, D967, D968, D969, D970, D971, D972, D973, D974, D975, D976, D977, D978, D979, D981, D982, D983, D986, D987, D988, D989, D990, D991, D992, D993, D994, D995, D996, D1006, D1035, D1039, D1092, D1093, D1095, D1098, D1099, D1104, D1105, D1107, D1109, D1110, D1112, D1115, D1116, D1118, D1119, D1121, D1122, D1123, D1124, D1125, D1126, D1127, D1128, D1129, D1130, D1131, D1132, D1133, D1134, D1135, D1136, D1137, D1138, D1139, D1140, D1141, D1142, D1143, D1145, D1146, D1147, D1148, D1149, D1150, D1151, D1152, D1154, D1155, D1156, D1278.

evidence to dispute this fact. The Court thus concludes as a matter of law that Matthews copied those designs into Design Pro. Design Mart also asserts that the Court should conclude, as a matter of law, that Matthews uploaded an additional twenty-seven designs into Design Pro because Reeder summarily testified that she uploaded all of the designs from four of Design Mart's booklets: "Precious Memories," "Ties That Bind," "A Closer Walk," and "Hold On To The Memory."[7] While this evidence likely creates a genuine fact dispute on whether the designs from those booklets were uploaded to Design Pro, Matthews points out that Design Mart had access to Design Pro during discovery but did not present any evidence that Design Mart or its counsel actually observed the twenty-seven designs in Design Pro. Accordingly, a factfinder could also conclude that Reeder did not upload all the designs from the four booklets to Design Pro. Because genuine fact disputes exist as to whether these twenty-seven designs were copied to Design Pro, Design Mart is not entitled to summary judgment on the issue of factual and legal copying as to these twenty-seven designs. Design Mart did not move for summary judgment on whether any of the copying was "willful," so genuine fact disputes exist on that issue.

---

[7] Those designs are: D621, D622, D628, D629, D630, D631, D633, D637, D639, D642, D647, D900, D901, D904, D905, D907, D909, D911, D980, D1096, D1097, D1100, D1108, D1111, D1114, D1120, D1153.

## III. Are There Genuine Fact Disputes on Damages?

The next question for the Court is whether genuine fact disputes exist on the issue of damages.  A copyright owner may recover actual damages it suffered as a result of the infringement. 17 U.S.C. § 504(b).  In the alternative, the copyright owner may elect to recover statutory damages.  *Id.* § 504(c)(1).  This election may be made "at any time before final judgment is rendered." *Id.*  Design Mart did not move for summary judgment on the amount of damages, but it does seek summary judgment that each design covered by its copyright registrations is a separate work for purposes of a statutory damages calculation.  Matthews, on the other hand, contends that Design Mart cannot show that its designs are separate works for purposes of a statutory damages claim. Matthews further argues that Design Mart will not be able to prove actual damages, and it seeks summary judgment on that issue.  The Court will first address statutory damages, then actual damages.

### A.   Statutory Damages

A copyright owner may elect to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work."  17 U.S.C. § 504(c)(1).  "For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work." *Id.*  Design Mart contends that each design covered by a copyright registration is a separate work for purposes of statutory damages, while Matthews argues that Design Mart only

23

registered its gravestone designs as compilation works that were included in Design Mart's booklets of gravestone designs, which are not separate works for purposes of statutory damages.

The Copyright Act does not define what the term "any one work" means for an award of statutory damages, though it is clear that "all the parts of a compilation" are "one work." *Id.* "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works." *Id.* § 101. Matthews argues that Design Mart registered all its monument designs as parts of leaflets and booklets, which should be considered compilations for purposes of statutory damages. But Design Mart did not register all of its designs as parts of leaflets and booklets. Twelve of the registrations Design Mart relies on state that they are for "Monumental Design" and reference specific monument designs that were submitted to the copyright office in card form.[8] So, these copyright registrations encompass multiple designs, regardless of whether they also appear in a leaflet or booklet. Another two

---

[8] Pl.'s Mot. Summ. J. Ex. 11, Copyright Registration VA0000352933 (D1119 to D1131), VA0000354930 (D1092 to D1118), VA0000366876 (D1132 to D1142), VA0000391777 (D1143 to D1156), VA0000415859 (D867 to D879), VA0000432745 (D880 to D892), VA0000432746 (D893 to D903), VA0000457608 (D904 to D914), VA0000463227 (D926 to D938), VA0000463228 (D939 to D946), VA0000463442 (D915 to D925), VA0000850920 (D1278 to D1279), ECF No. 47-7 at 208-09, 220-37, 240-47.

registrations reference specific design numbers and state that
they are for illustrations of granite products that were submitted
to the copyright office in leaflet or booklet form.[9]  Altogether,
these fourteen registrations reference individual designs D821 to
D996, D1092 to D1156, and D1278 to D1289.

The fact that Design Mart registered groups of gravestone
designs together does not necessarily mean that each registration
is for a compilation or that each design is not a separate "work"
for purposes of a copyright infringement action.  The Copyright
Act permits the Register of Copyrights to allow "a single
registration for a group of related works."  *Id.* § 408(c)(1).  A
single registration is permitted for "all copyrightable elements"
of published works "that are otherwise recognizable as self-
contained works, that are included in the same unit of publication,
and in which the copyright claimant is the same" and may be
considered one work for "the purpose of registration on one
application and upon the payment of one filing fee."  37 C.F.R.
§ 202.3(b)(1)(iii), (b)(4).[10]  The "administrative classification
of works has no significance with respect to the subject matter of
copyright or the exclusive rights provided by" the Copyright Act.
17 U.S.C. § 408(c)(1).  So, a copyright owner who registers

---

[9] Pl.'s Mot. Summ. J. Ex. 11, Copyright Registrations VA0000435317 (D947
to D996), VA0000432041 (D821 to D866) ECF No. 47-7 at 234-35, 228-29.
[10] When Design Mart registered most of its designs, the language and
number of the regulation was slightly different, but the rule was the
same.  *See* 37 C.F.R. § 202.3(b)(3)(A) (1988).

copyrights in multiple works on a single registration form may still collect statutory damages for the infringement of each work as long as each work is distinct enough to live its "own copyright life." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (quoting *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116 (1st Cir. 1993)).

The Eleventh Circuit adopted an "independent economic value" test for determining whether the expression is a distinct "work" that can live its "own copyright life." *Feltner*, 89 F.3d at 769 (quoting *Gamma*, 11 F.3d at 1116). If the expression "has an independent economic value and is, in itself, viable," then it may be considered a distinct "work." *Gamma*, 11 F.3d at 1117. For example, a single episode of a television series is considered a distinct "work" if it is independently produced, it airs separately from preceding and subsequent episodes, and viewers may rent or purchase a single episode. *Id.*; *accord Feltner*, 89 F.3d at 769-70. In contrast, where a photographer creates, markets, registers, and sells his photographs primarily as collections, not as individual photos, then each collection is a "compilation" that counts as a single "work" for purposes of statutory damages—particularly given the regulations on group registration of published photographs. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1279 (11th Cir. 2015) (concluding that the evidence adduced *at a jury trial* supported a finding that the photographs

were part of compilations).  So, if the copyright holder derives economic value primarily from the collected works together rather than the individual works on their own, he cannot recover statutory damages for each individual work.  *Id.*

Whether a work is part of a compilation for purposes of statutory damages is a mixed question of law and fact.  *Id.* at 1277.  Here, the present record shows that Design Mart individually licenses its gravestone designs even though it registered multiple designs on a single registration form.  A gravestone manufacturer can purchase a license for an individual design so it can carve that design gravestone for its client.  A funeral home or cemetery may purchase a license for an individual design so it can place an image of that design on its website.  From this evidence, a reasonable factfinder could conclude that each gravestone design has independent economic value.

But the record also shows that Design Mart registered its designs in groups.  It is undisputed that Design Mart bundled its gravestone designs into printed catalogs in booklet and leaflet form, which it sells to funeral homes and cemeteries.  The record also demonstrates that Design Mart compiled its designs into two online subscription-based Monument Designer products.  Design Mart derives income from both the printed catalogs and the subscription-based online catalogs.  Design Mart's prayer for actual damages focuses on a retroactive license for the Monument Designer products

rather than damages based on licenses for individual gravestone designs.[11] And, Design Mart relies not only on registrations where multiple designs were identified by number and submitted in card form, but also on registrations which stated they were for a group of designs in booklet form and appear to cover some of the same designs that were registered elsewhere. From this evidence, a reasonable factfinder could conclude that the gravestone designs are part of compilations and should not be considered independent works for purposes of statutory damages.[12]

In summary, the present record would permit a finding that Design Mart derives economic value both from the individual gravestone designs and from the collections of designs. It is not clear from the present record whether Design Mart derives economic value primarily from the collected designs or the individual designs. Accordingly, genuine fact disputes preclude summary judgment on whether each gravestone design is an independent work for purposes of statutory damages. The Court denies Design Mart's summary judgment motion on this issue.

---

[11] Design Mart did not point to evidence that a Design Pro user can download Design Mart CAD files from Design Pro to make stencils instead of purchasing them from Design Mart, so the present record does not establish that a Design Pro user can avoid paying Design Mart's individual license fees.

[12] At trial, Design Mart should be prepared to present evidence of the specific registrations and design numbers for which it intends to seek statutory damages.

Before the Court turns to the issue of actual damages, the Court notes that sixteen gravestone designs which Design Mart claims Matthews copied are not listed in any of the registrations that contain design numbers.[13]  Design Mart contends that these designs are covered by registrations that reference booklet or leaflet names.  Although Design Mart submitted several booklets with titles similar to those referenced in the registrations, it appears from the present record that some of the booklets were revised from time to time, and Design Mart did not clearly point to any testimony or exhibits showing that the booklets it submitted to the Court are the same booklets it submitted to the copyright office with the registrations.  So, Design Mart did not point to sufficient evidence to establish, as a matter of law, that those sixteen designs were registered.  Registration is a prerequisite for a copyright infringement action, so Design Mart is not entitled to summary judgment on its claims that Matthews committed copyright infringement for those sixteen designs.  Matthews did not move for summary judgment on this issue, so these sixteen designs potentially remain in the case for trial.  Design Mart is on notice that if it intends to pursue damages at trial based on infringement of these sixteen designs, it must first present evidence that connects all the dots regarding their registration.

---

[13] Those sixteen designs are: D621, D622, D626, D628, D629, D630, D631, D632, D633, D637, D639, D642, D647, D1006, D1035, D1039.

B.   Actual Damages

As an alternative to its claim for statutory damages, Design Mart seeks actual damages.  A "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement," as well as "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).

As a preliminary matter, Matthews did not clearly move for summary judgment on Design Mart's claim for actual damages in the form of Matthews's profits that are causally connected to the infringement.  Accordingly, that issue remains pending for trial. Design Mart is reminded that to recover profits, it "must show a causal relationship between the infringement and profits." *Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846, 863 (11th Cir. 2021) (per curiam) (quoting *Pronman v. Styles*, 676 F. App'x 846, 848 (11th Cir. 2017) (per curiam).  Thus, to recover this element of actual damages at trial, Design Mart must present evidence of a non-speculative, legally significant relationship between Matthews's profits and its copying of Design Mart's gravestone designs.

Matthews did move for summary judgment on Design Mart's claim for actual damages in the form of a retroactive license, arguing that Design Mart is seeking to recover speculative lost profits based on loss of Monument Designer subscription sales.  Where a

copyright holder seeks to recover actual damages in the form of its own lost profits, the copyright holder must submit non-speculative evidence of "the volume of sales" the copyright holder "would have obtained but for the infringement." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999) (quoting 4 Nimmer on Copyright § 14.02[A]).  Here, though, Design Mart does not seek actual damages in the form of its own lost profits.  Rather, it seeks to recover actual damages based on the fair market value of a license covering Matthews's use of its copyrighted works.

Several circuits have concluded that where a copyright owner "cannot show lost sales, lost opportunities to license, or diminution in the value of the copyright," then actual damages may be "based on the fair market value of a license covering the defendant's use." *Bitmanagement Software GmBH v. United States*, 124 F.4th 1368, 1374 (Fed. Cir. 2025) (quoting *Gaylord v. United States*, 678 F.3d 1339, 1343 (Fed. Cir. 2012)); *accord On Davis v. The Gap, Inc.*, 246 F.3d 152, 161 (2d Cir. 2001), *as amended* (May 15, 2001); *see also Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999) (affirming jury award of actual damages based partly on how much the defendants "would have had to pay" the plaintiff for a license to use the plaintiff's copyrighted software as they did). "The value of this license should be calculated based on a hypothetical, arms-length negotiation between the parties"—actual damages would be "what a willing buyer would have been reasonably

required to pay to a willing seller for plaintiffs' work." *Gaylord*, 678 F.3d at 1343 (quoting *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007)). The goal is "to compensate a plaintiff for the defendant's failure to pay for the reasonable value of what the defendant took." *On Davis*, 246 F.3d at 161. Accordingly, the Court finds that Design Mart may pursue this retroactive license fee.

Design Mart presented the testimony of Lisa Miller, who offers opinions about the fair market value of a license for Matthews's use of Design Mart's gravestone designs. Matthews did not explicitly move to exclude Miller's testimony, but it argues that the Court should reject Miller's testimony. Without Miller's testimony, Design Mart cannot establish the value of a retroactive license. In a nutshell, Matthews argues that the Court should reject Miller's testimony because (1) Miller's damages calculation includes a license fee for designs that are not at issue in this action, (2) in determining which designs to include in her calculation, Miller relied on evidence from other witnesses, (3) the value of a Monument Designer license is not limited to the value of the copied designs, (4) Design Mart's designs are a small part of Design Pro, (5) Matthews could have licensed the designs some other way, and (6) Miller used incorrect data in reaching her

conclusion.[14]   Based on the Court's review, Matthews's objections to Miller's testimony go to its weight, not its admissibility, and can be addressed in a thorough and sifting cross examination.  The Court finds that Miller's testimony creates genuine fact disputes about the value of a retroactive license fee.  Accordingly, the Court denies Matthews's summary judgment motion (ECF No. 36).

CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Design Mart's summary judgment motion (ECF No. 43) and denies Matthews's summary judgment motion (ECF No. 36).  The Court finds that a hearing is unnecessary and therefore denies Matthews's motion for a hearing (ECF No. 59).

IT IS SO ORDERED, this 29th day of August, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[14] Matthews also argues that Miller overlooked that it had permission to copy the designs based on its end user license agreement for Monument Designer.  As discussed above, Matthews did not have such permission.